**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| EUSTACE GLOVER,<br>Plaintiff,<br>v.<br>MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br>Defendant. | No. CV 11-6660-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on August 24, 2011, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on September 9, 2011, and September 22, 2011. Pursuant to the Court's Order, the parties filed a Joint Stipulation on April 20, 2012, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born on May 24, 1983. [Administrative Record ("AR") at 67.] He has a twelfth grade education, and past relevant work experience as a caregiver, a janitor, and a sales representative. [AR at 179, 183.]

Plaintiff filed an application for Supplemental Security Income payments on May 22, 2008, alleging that he has been unable to work since December 28, 2004, due to chronic pain, an inability to "stand for long periods of time," an inability to "do any lifting," "difficulties with concentration," and "anxiety that makes [him] uncomfortable around people." [AR at 153-56, 177-85.] After his application was denied initially, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 75-78, 81-83.] A hearing was held on November 3, 2009, at which time plaintiff appeared with counsel and testified on his own behalf. [AR at 46-65.] A psychological expert and a medical expert also testified. [AR at 57-60, 62-64.] The ALJ concluded the hearing after the psychological expert recommended a "standard psychological examination" be performed on plaintiff and the medical expert recommended x-rays be taken of plaintiff. [AR at 62-65.] A second hearing was held on June 15, 2010, at which time plaintiff again appeared with counsel and testified on his own behalf. [AR at 28-45.] The psychological and medical experts from the first hearing testified, and a vocational expert also testified. [AR at 32-42.] On June 30, 2010, the ALJ determined that plaintiff was not disabled. [AR at 13-23.] On July 21, 2011, the Appeals Council denied plaintiff's request for review. [AR at 1-4.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or

equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

## B. THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since May 22, 2008, the application date. [AR at 15.] At step two, the ALJ concluded that plaintiff has severe impairments of status post pelvic fracture and repair, status post left femur fracture and repair, and depressive disorder. [Id.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 15-16.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[1] to perform "light work as defined in 20 C.F.R. § 416.967(b),"[2] except that plaintiff "can lift/carry 20 pounds occasionally and 10 pounds frequently," "can stand/walk 6 hours and sit 6 hours each in an 8-hour workday," and "is limited to simple, repetitive tasks." [AR at 16.] At step

---

1 RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

2 20 C.F.R. § 416.967(b) defines "light work" as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls."

four, the ALJ concluded that plaintiff was not capable of performing his past relevant work. [AR at 22.] At step five, the ALJ found, based on the vocational expert's testimony and the application of the Medical-Vocational Guidelines, that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform." [AR at 22-23.] Accordingly, the ALJ determined that plaintiff was not under a disability at any time since May 22, 2008, the date his application was filed. [AR at 23.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to: (1) properly consider the opinions of plaintiff's treating psychiatrist; (2) provide a complete and accurate assessment of plaintiff's RFC; and (3) properly assess plaintiff's ability to perform work in the regional or national economy. [Joint Stipulation ("JS") at 2-21.] As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**PLAINTIFF'S TREATING PSYCHIATRIST'S OPINIONS**

Plaintiff contends that the ALJ "failed to fully discuss or address" the opinions of plaintiff's treating psychiatrist, Dr. Izabella Gokhman. [See JS at 3-7.] The Court agrees, for the reasons discussed below.

In evaluating medical opinions, the case law and regulations distinguish among three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 416.927; Lester, 81 F.3d at 830. Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (more weight is generally given to the opinions of treating physicians because they "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of

[the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.").

Where a treating physician's opinion does not contradict other medical evidence, the ALJ must provide clear and convincing reasons to discount it. Lester, 81 F.3d at 830; see also Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) ("The administrative law judge is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, but he cannot reject them without presenting clear and convincing reasons for doing so.") (internal citation and quotations omitted). Where a treating physician's opinion conflicts with other medical evidence, the ALJ must set forth specific and legitimate reasons supported by substantial evidence in the record to reject it. Lester, 81 F.3d at 830; see also McAllister v. Sullivan, 888 F.2d 599, 602-03 (9th Cir. 1989) (remand warranted where ALJ failed to give adequately specific and legitimate reasons for disregarding treating physician's testimony that the claimant was disabled due to personality disorder). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ "must set forth his own interpretations and explain why they, rather than the [treating] doctors', are correct." Id.

Plaintiff received treatment from Dr. Gokhman of the West Valley Mental Health Center ("WVMHC"), at least one other doctor, and other WVMHC staff members every several months from July 2007, through April 2010. [AR at 351-72, 438-49, 585-89.] In an Initial Assessment dated July 2, 2007, a WVMHC staff member noted that plaintiff showed an "impaired" memory, "paranoid ideation," "excessive worry," an "inappropriate display of anger," "isolat[ion]/withdraw[al]," and "extreme difficulty being in crowds." [AR at 353-63 (emphasis in original).] In the same assessment, plaintiff was diagnosed with depression and post-traumatic stress disorder. [AR at 363.] In an Evaluation By Physician dated August 9, 2007, a WVMHC

physician with the initials "M. W."[3] noted that plaintiff's "'paranoia' [was] highly questionable as to whether [it is] truly psychosis, but seem[ed] more [consistent with] extreme social anxiety/phobia." [AR at 368 (emphasis in original).] Dr. M. W. also diagnosed plaintiff with depression and insomnia [id.], and prescribed Zoloft and Trazodone in a Medication Log dated the same day. [AR at 371.] In a Medication Log dated April 8, 2008, WVMHC psychiatrist Gokhman noted that plaintiff showed increased insomnia and anxiety after having run out of his "meds" two weeks earlier. [AR at 369.] In the same Medication Log, Dr. Gokhman indicated that plaintiff's "target symptoms" included "anxiety, panic attacks," "depression, chronic pain," and "insomnia," and she prescribed Cymbalta, Trazodone, and Ativan. [Id.]

In a Mental Residual Functional Capacity Questionnaire dated August 27, 2009, Dr. Gokhman indicated that she saw plaintiff every three months between August 9, 2007, and July 27, 2009. [AR at 438-43.] In the same Questionnaire, Dr. Gokhman assigned plaintiff a Global Assessment of Functioning ("GAF") score[4] of 50 [AR at 438], which indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 34. Moreover, Dr. Gokhman indicated that plaintiff is "mild[ly] limit[ed]," "but can generally function well" in: "understand[ing] and remember[ing] very short and simply [sic] instructions;" "carry[ing] out very short and simple instructions;" "interact[ing] appropriately with the general public;" "accept[ing] instructions and respond[ing] appropriately to criticism from supervisors;" and "get[ting] along with co-workers or peers without distracting them or exhibiting behavioral extremes." [AR at 441-42.] Dr. Gokhman further indicated that plaintiff is "marked[ly] limit[ed]," i.e., has "serious limitation[s]" and "a substantial loss in the ability to effectively function" in: "perform[ing] activities within a schedule, maintain[ing] regular attendance and be[ing] punctual

---

[3] The abbreviation "M.D." follows the physician's signature, which is not entirely legible. [See AR at 368.]

[4] A GAF score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") at 32 (4th Ed. 2000).

within customary tolerances;" "tolerat[ing] normal levels of stress;" and "complet[ing] a normal work-day and work-week, without interruptions from psychologically-based symptoms and perform[ing] at a consistent pace without an unreasonable number and length of rest periods." [Id.] Dr. Gokhman's handwritten notes provide that plaintiff is "[u]nable to focus, gets easily frustrated due to severe chronic pain," and "cannot sit for long periods[] [because] he feels tired and unable to focus for extended periods." [AR at 442.] Additionally, Dr. Gokhman opined that plaintiff "has become very cautious and hypervigilant, often responding to sounds excessively and avoiding situations that might initiate a panic attack or anxiety." [AR at 443.] Finally, Dr. Gokhman opined that plaintiff had lacked the ability to function outside of a "h[i]ghly supportive living arrangement" for at least one year prior to the date of the Questionnaire, and has shown a "continued need for such an arrangement." [Id.]

In discounting Dr. Gokhman's opinions, the ALJ stated that those opinions were "internally inconsistent and conflicting." [AR at 20-21.] Specifically, the ALJ asserted that: (1) Dr. Gokhman's assessment of plaintiff's GAF score conflicts with her indication that plaintiff has mild limitations in his abilities to "understand," "remember," and "carry out very short and simple instructions;" and (2) Dr. Gokhman's indication that plaintiff has mild limitations in social interactions with the general public, supervisors, and coworkers conflicts with her opinion that plaintiff "avoid[s] situations that might initiate a panic attack or anxiety." [AR at 20-21, 441-43.] The ALJ also stated that no evidence supports Dr. Gokhman's opinion that plaintiff has a continued need for a "h[i]ghly supportive living arrangement." [AR at 21, 443.]

Moreover, in concluding that plaintiff could perform light work, the ALJ gave Dr. Gokhman's opinions "less weight" than the opinions of the medical expert. [AR at 21, 32-34.] At the June 15, 2010, hearing, the medical expert opined that plaintiff could do medium work, and the ALJ gave this testimony "great weight." [Id.] The ALJ also appeared to give Dr. Gokhman's opinions less weight than that of a consultative examiner. [AR at 21-22, 382-88.] In a Complete Psychiatric Evaluation dated July 22, 2008, the consultative examiner opined that plaintiff "is able to complete a normal workday without interruptions resulting from his psychiatric condition;" the ALJ referenced this Evaluation in his decision. [Id.] To the extent that these opinions contradict the opinions of

Dr. Gokhman -- an "acceptable medical source"[5] and one of plaintiff's treating physicians at WVMHC -- the ALJ was required to set forth specific, legitimate reasons supported by substantial evidence to discount them. Lester, 81 F.3d at 830. The Court finds that the ALJ's reasons were not legally sufficient.

Although an ALJ may reject a treating physician's opinions that are internally inconsistent or that are inconsistent with the physician's treatment notes (Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 602-03 (9th Cir. 1999); Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992); Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir. 1989)), here, it is not at all clear that Dr. Gokhman's findings were in fact inconsistent as asserted by the ALJ. Specifically, it is not clear -- as the ALJ appears to assert in the decision [see AR at 20-21] -- that plaintiff's mild limitations in social interactions with the general public, supervisors, and coworkers is necessarily inconsistent with plaintiff's tendency to "avoid situations that might initiate a panic attack or anxiety." [See AR at 21, 441-43.] Plaintiff's Initial Assessment provides that plaintiff showed "extreme difficulty being in crowds," but that his eye contact was "[n]ormal for culture" and that his "interactional style" was "[c]ulturally congruent" and "[c]ooperative." [AR at 362 (emphasis in original).] Thus, it may be that plaintiff is susceptible to panic attacks or anxiety when interacting with crowds, but only has mild limitations in his social interactions with smaller numbers of people. Accordingly, this alleged "inconsistency" highlighted by the ALJ with regard to Dr. Gokhman's findings does not constitute a specific and legitimate reason for rejecting Dr. Gokhman's treating opinion.

The ALJ also discounted Dr. Gokhman's opinions because he found that her assessments of plaintiff's GAF score and plaintiff's mild limitations were inconsistent. [See AR at 20-21.] The ALJ noted, referencing Dr. Gokhman's Mental Residual Functional Capacity Questionnaire, that Dr. Gokhman "[gave] a GAF score of 50, denoting severe and marked limitations, yet indicates that [plaintiff] only has mild limitations in understanding, remembering and carrying out simple instructions." [AR at 20-21, 438, 441.] However, in the same Questionnaire, Dr. Gokhman also

---

[5] "Acceptable medical sources" include, among other professionals, licensed physicians and psychologists. 20 C.F.R. §§ 404.1513(a), 404.1527(d), 416.913(a), 416.927(d).

opined that plaintiff is "marked[ly] limit[ed]" in: "perform[ing] activities within a schedule, maintain[ing] regular attendance and be[ing] punctual within customary tolerances;" "tolerat[ing] normal levels of stress;" and "complet[ing] a normal work-day and work-week, without interruptions from psychologically-based symptoms and perform[ing] at a consistent pace without an unreasonable number and length of rest periods." [AR at 441-42.] It may be that, as a GAF score of 50 indicates, plaintiff is unable to work because of his various marked limitations, but only has mild limitations in understanding, remembering, and carrying out simple instructions. The ALJ did not elaborate on this distinction. Accordingly, this alleged "inconsistency" highlighted by the ALJ also does not constitute a specific and legitimate reason for rejecting Dr. Gokhman's treating opinion. See Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (An ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence."); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") (citation omitted).

Finally, the ALJ stated that no evidence showed that plaintiff lacked the ability to function outside of a "h[i]ghly supportive living arrangement" or that plaintiff has a "continued need for such an arrangement." [AR at 21, 443.] In a Pain Questionnaire dated July 13, 2008, plaintiff indicated that he needs assistance to cook, bathe, shop, and go out to do laundry, and that his mother drives him to run errands. [See AR at 213-15.] In an undated Function Report,[6] plaintiff indicated that he lives "[w]ith [f]amily," that he sometimes needs stickers posted on his mirror to remind him to take care of personal needs and grooming, that he fears "being around people" and "riding and driving in cars," and that he "can't always put [his] shoes on alone." [AR at 197-204.] Additionally, in an undated Disability Report, plaintiff indicated that he is "unable to care for [his] personal needs, [and] [his] mother helps [him] with [his] daily activities due to [his] limited mobility." [AR at 219-25.] Moreover, a Medication Log dated December 18, 2007, provides that plaintiff is "very dependent on [his] mother." [AR at 371.] Progress Notes from WVMHC also indicate that plaintiff's mother frequently scheduled plaintiff's appointments and communicated with doctors on

[6] In the space provided on the form to indicate the date the form was completed, plaintiff wrote the date of his birth rather than the date of completion. [See AR at 204.]

plaintiff's behalf. [See AR at 364, 366, 445, 449, 587.] Given plaintiff's statements that he needs assistance to cook, bathe, shop, go out to do laundry, run errands, and remind him of personal needs and grooming, and plaintiff's dependence on his mother to communicate with doctors, the ALJ improperly concluded that the record lacks evidence that plaintiff needs a highly supportive living arrangement. [See AR at 21.] An ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. See Reddick, 157 F.3d at 722-23; Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore or misstate the competent evidence in the record in order to justify his conclusion). Thus, the ALJ's conclusion that "there is currently no evidence" that plaintiff continues to need a highly supportive living arrangement also was not a specific and legitimate reason to discount Dr. Gokhman's opinions. [See AR at 21.]

The ALJ did not provide specific and legitimate reasons supported by substantial evidence to discount Dr. Gokhman's opinions. Remand is warranted.

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

**VI.**

**REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for the ALJ to reconsider Dr. Gokhman's opinions.[7] The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: July 27, 2012

PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[7] As the ALJ's reexamination of Dr. Gokhman's opinions on remand may impact on the other issues raised in the Joint Stipulation, the Court will not address those issues in this Order.